# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA
# FORT LAUDERDALE DIVISION

| | |
|---|---|
| ATLANTIC SPECIALTY INSURANCE COMPANY, A MINNESOTA CORPORATION, | ) ) ) ) |
| Plaintiff, | ) ) ) No. |
| v. | ) ) |
| LIBERTY GRANDE, LLC, A FLORIDA LIMITED LIABILITY COMPANY; AND MOSES BENSUSAN AKA MOISE BENSUSAN, AN INDIVIDUAL, | ) ) ) ) ) |
| Defendants. | ) ) |

## COMPLAINT

Plaintiff, Atlantic Specialty Insurance Company, a Minnesota Corporation ("Atlantic Specialty" or "Surety"), sues Liberty Grande LLC ("Liberty Grande" or "Principal"), and Moses Bensusan aka Moise Bensusan ("Mr. Bensusan") (collectively, the "Indemnitors" or "Defendants"), and alleges as follows:

### JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, on the basis of diversity of jurisdiction with an amount in controversy over $75,000, excluding costs, attorneys' fees and interest.

1

## VENUE

2. Venue is proper in the United States District Court for the Southern District of Florida, pursuant to 18 U.S.C. § 1965, as all Indemnitors reside, are found, have an agent, or transact affairs within this District.

## PARTIES

3. This is an action for damages in an amount in excess of $75,000, exclusive of costs, attorneys' fees, and pre and post-judgment interest.

4. Atlantic Specialty is and at all times mentioned was a corporation organized and existing under the laws of Minnesota, with its principal place of operations located at 605 Highway 169 North, Suite 800, Plymouth, Minnesota 55441.

5. Liberty Grande is and at all times mentioned was a limited liability company organized and existing under the laws of Florida, with its last known principal place of business located at 777 N. Ocean Drive, Hollywood, Florida 33019.

6. Mr. Bensusan resides at 20155 NE 38th Court, Apt. 1501, Aventura, Florida 33180, is over the age of 18, and a citizen of the State of Florida.

7. All conditions precedent to the filing of this action have been satisfied or are hereby waived.

## BACKGROUND

### The Indemnity Agreement

8. Liberty Grande approached Atlantic Specialty to issue a surety bond in connection with a condominium project known as Costa Hollywood, a Condominium located at 777 North Ocean Drive, Hollywood, Florida 33019.

9. Atlantic Specialty required a promise of indemnity or posting of collateral from Liberty Grande and Mr. Bensusan prior to issuance of any bond.

10. Accordingly, on or about July 7, 2014, the Indemnitors jointly and severally executed and delivered a General Indemnity Agreement in favor of Atlantic Specialty. A true and correct copy of the General Indemnity Agreement is attached hereto, incorporated by reference, and made a part hereof as **Exhibit 1** (the "GIA").

11. Pursuant to the GIA, Atlantic Specialty received, among other things, the written promise of Indemnitors to indemnify and hold Atlantic Specialty harmless from any and all losses, fees, costs and expenses of any kind or nature that Atlantic Specialty might sustain as a consequence of executing the Bond.

12. In particular, Paragraph 2) of the GIA states the following:

The Indemnitors shall exonerate, hold harmless, indemnify, and keep indemnified the Surety from and against any and all liability for losses, fees, costs and expenses of any kind or nature, including but not limited to, court costs, attorney's fees, accounting, and any other outside consulting fees and from and against any such losses and expenses which the Surety may sustain or incur plus interest thereon, arising out of, directly or indirectly: (1) the Surety being requested by the Indemnitors to execute or procure the execution of any Bonds; or (2) the Surety having executed or procured the execution of any Bonds on behalf of Principal; or (3) the failure of the Indemnitors to perform or comply with any of the terms and conditions of this Agreement and/or (4) the Surety enforcing any of the terms and conditions of this Agreement.

13. In Paragraph 3), the Indemnitors obligated themselves to post collateral:

The Indemnitors upon demand of the Surety shall procure the discharge of the Surety from any Bonds and all liability by reason thereof. If such discharge is unattainable or the surety is in receipt of claim the Indemnitors shall deliver to the Surety collateral in the form and amounts acceptable to the Surety in its sole and absolute discretion.

14. Paragraph 3) continues with the Indemnitors acknowledging the irreparable harm befalling the Surety upon the Indemnitors' failure to deposit collateral:

>Indemnitors agree that their failure to immediately deposit with Surety any sums demanded under this section shall cause irreparable harm to Surety for which it has no adequate remedy at law, and Surety shall be entitled to injunctive relief for specific performance of such obligation.

### Atlantic Specialty's Bond and Losses/Exposure Thereunder

15. In reliance on the Indemnitors' execution of the GIA, Atlantic Specialty, on behalf of Liberty Grande, as principal, and in favor of Chicago Title Insurance Company and the Division of Florida Condominiums, Timeshares and Mobile Homes of the Department of Business and Professional Regulation ("Division") as obligees, issued Bond 800004730 in connection with the Costa Hollywood project in the penal sum of six million dollars ($6,000,000) ("Bond"). A true and correct copy of the Bond is attached hereto, incorporated by reference, and made a part hereof as **Exhibit 2**.

16. Under the Bond, when the Principal fails to refund a condominium purchaser's deposits and other conditions are met, the Surety may be obligated to disburse the deposits to the escrow agent, Chicago Title Insurance Company, that are due and payable.

17. On September 23, 2020, Atlantic Specialty was sued as a third-party defendant by Chicago Title Insurance Company in the case styled *Renacer L.L.C. v. Chicago Title Insurance Company*, case number CACE-20-014452 in the Circuit Court of the Seventeenth Judicial Circuit, in and for Broward County, Florida ("Litigation").

18. The plaintiff Renacer is a unit owner in the Costa Hollywood project that seeks the return of its security deposits in excess of four-hundred thousand dollars ($400,000). Because disbursing security deposits to Chicago Title is an obligation of the Surety under the Bond that must be fulfilled when certain conditions under the Bond are met, this obligation presents substantial loss exposure to the Surety.

19. Additionally, on November 16, 2020, Chicago Title notified Atlantic Specialty of a demand from another unit owner for the return of their deposit in the amount of three-hundred twelve thousand dollars ($312,000). This demand represents further loss exposure to the Surety.

20. In fact, the Surety has learned through the course of the Litigation that other unit owners are awaiting refunds of their deposits, so the Surety's loss exposure will only continue to increase.

21. Pursuant to the terms of the GIA and, as a result of the above losses or loss exposure, Atlantic Specialty sent a collateral demand letter to the Indemnitors on or about October 21, 2020 demanding the deposit of six million dollars ($6,000,000) in the form of a letter of credit or cash by October 30, 2020. A true and correct copy of the demand is attached hereto, incorporated by reference, and made a part hereof as **Exhibit 3** ("Demand"). To date, the Indemnitors have failed to deposit the collateral.

22. The Indemnitors' failure to post collateral is a material breach of the GIA, to wit, Paragraph 2) addressing indemnity: "the failure of the Indemnitors to perform or comply with any of the terms and conditions of this Agreement." The Indemnitors' failure to post collateral has further impelled the Surety to enforce the terms of the GIA, the expenses of which are also recoverable under the GIA.

23. In addition to the anticipated losses stated above, Atlantic Specialty has incurred and continues to incur attorneys' fees arising out of or in connection with the Bond in an amount to be proven in this action, with such fees recoverable under paragraph 2) of the GIA.

24. Atlantic Specialty faces substantial loss exposure under the GIA and reasonably expects the loss exposure to increase.

25. Each Indemnitor materially breached and defaulted upon their obligations under the GIA by failing or refusing to deposit collateral with the Surety for loss exposure faced by the Surety and by failing or refusing to indemnify and reimburse the Surety for its loss adjusting expenses, attorneys' fees and consultancy fees.

26. In sum, the Indemnitors, jointly and severally, owe the Surety collateral in the principal amount of six million dollars ($6,000,000) for loss exposure and allocated expenses for consulting and legal representation, loss-adjustment expenses, and prejudgment interest from the date of the collateral demand. The Indemnitors, joint and severally, also owe the Surety for any and all losses, costs, expenses, and attorneys' fees, incurred after the filing of this action.

## CLAIMS FOR RELIEF

### COUNT I – Breach of Indemnity Agreement

27. Atlantic Specialty realleges and incorporates by reference paragraphs 1 through 26 of this Complaint.

28. As stated in more detail above, the Indemnitors entered into a GIA with Atlantic Specialty on or about July 7, 2014.

29. The GIA provides that the Indemnitors, jointly and severally, will indemnify and hold Atlantic Specialty harmless for any and all liability for any and all losses incurred.

30. The Indemnitors materially breached the Agreement of Indemnity by (1) failing to post collateral upon Atlantic Specialty's demand, (2) failing to exonerate Atlantic Specialty for the loss exposure and losses it has sustained, in the discharge of its obligations as surety, with regard to the claim made against the Bond, (3) failing to indemnify and hold Atlantic Specialty harmless, for the loss exposure and losses it has sustained, in the discharge of its obligations as surety, with regard to claims made against the Bond,  and (4) failing, delaying, refusing, or being unable to

6

return purchaser deposits or other indebtedness incurred in, or in connection with, the performance of any obligations covered by the Bond.

31. Atlantic Specialty has performed all conditions to be performed on its part under the Bond and under the GIA.

32. As a direct result of the Indemnitors' breach of the GIA, Atlantic Specialty has been damaged incurring substantial costs, exclusive of court costs, expenses, and attorneys' fees in an amount to be proven at trial, which currently exceeds seven-hundred thousand dollars ($700,000) in loss exposure.

## COUNT II – Common Law Indemnity/Reimbursement

33. Atlantic Specialty realleges and incorporates by reference paragraphs 1 through 26 of this Complaint.

34. A special relationship exists between Liberty Grande, as the principal and primary obligor under the Bond, and Atlantic Specialty, as Liberty Grande's surety and the secondary obligor under the Bond.

35. Atlantic Specialty, the party seeking indemnification, is without fault and has performed its obligations under the Bond, for which Liberty Grande is primarily responsible.

36. Atlantic Specialty's liability for payments made under or in connection with the Bond is vicarious and solely for the wrong of Liberty Grande defaulting and failing to fulfill its obligations.

37. Atlantic Specialty has suffered a direct and proximate loss, which currently exceeds fifty-thousand dollars $50,000, and is entitled to have Liberty Grande reimburse Atlantic Specialty for these losses incurred in the performance of Liberty Grande's obligations.

## **COUNT III – Quia Timet**

38. Atlantic Specialty realleges and incorporates by reference paragraphs 1 through 26 of this Complaint.

39. This is an action for quia timet seeking equitable relief.

40. In addition to the contractual requirement set forth in paragraph 3) of the GIA, Atlantic Specialty has a common law right to require Liberty Grande to post collateral to avoid depletion of its assets to the detriment of Atlantic Specialty, and to ensure faithful performance of Liberty Grande's obligations.

41. Atlantic Specialty may be called upon in the near future to pay debts relating to the Bond under a claim from Chicago Title, the exact amount of which has yet to be determined, but which has currently been estimated to amount to at least seven-hundred thousand dollars ($700,000.00).

42. Liberty Grande is obligated under the doctrine of quia timet to collateralize Atlantic Specialty for all losses and expenses that Atlantic Specialty fears or apprehends will be incurred as a consequence of having issued the Bond.

43. Atlantic Specialty has made demand on Liberty Grande to post collateral to guarantee the faithful performance of Liberty Grande's obligations. Despite such demand, Liberty Grande has failed and refused to post collateral.

44. In the absence of the equitable relief sought herein, Atlantic Specialty will not be adequately secured for any obligations that have arisen and may arise hereafter under the Bond and as a result of Liberty Grande's breaches of the GIA, all to the prejudice and irreparable harm of Atlantic Specialty. Without adequate security, Atlantic Specialty will be prejudiced because it will be required to advance funds in connection with the claim on the Bond in the Litigation.

45. Unless temporary and continuing injunctive relief is granted, Atlantic Specialty is fearful and apprehensive that Liberty Grande (a) is or will become financially unable to pay any amounts that may be found owing for which Atlantic Specialty has already paid or may be liable for and Atlantic Specialty's related expenses (including attorneys' fees); or (b) will sell, transfer, dispose, lien, secure or otherwise conceal or divert their assets based upon the refusal to secure Atlantic Specialty in accordance with its demands.

46. Unless the relief in the nature herein requested or its equivalent is granted, Atlantic Specialty's equitable right of quia timet will be forever lost, depriving Atlantic Specialty of adequate security for its obligation to make payments to the obligees under the Bond.

47. Atlantic Specialty seeks an order requiring Liberty Grande to post collateral to avoid depletion of Liberty Grande's assets and to ensure faithful performance of Liberty Grande's obligations.

## COUNT IV – Specific Performance

48. Atlantic Specialty realleges and incorporates by reference paragraphs 1 through 26 of this Complaint.

49. This is an equitable claim for specific performance to compel performance of an agreement or contract on the precise terms agreed upon.

50. Under the GIA, Atlantic Specialty agreed to terms with Indemnitors in paragraph 3) of the GIA, requiring the Indemnitors to post collateral sufficient to defray losses and expenses, both incurred and expected, in connection with the Bond.

51. Atlantic Specialty demanded that the Indemnitors post collateral in the amount of six million dollars ($6,000,000) pursuant to the GIA to guarantee the faithful performance of Indemnitors' obligations.

52. Despite such demand, Indemnitors have failed to satisfy their obligations under the GIA by refusing to post funds with Atlantic Specialty sufficient to cover losses and expenses incurred or expected to be incurred by Atlantic Specialty. Unless the assets of Indemnitors are provided to Atlantic Specialty as collateral, Atlantic Specialty will not be adequately paid, secured or collateralized for potential obligations prior to making any necessary and appropriate payments.

53. By the express provisions of the GIA, Atlantic Specialty is entitled to be placed in funds or other collateral security by the Indemnitors upon demand, in an amount that is sufficient to cover all losses and expenses to be incurred as a consequence of its issuance of the Bond.

54. In the GIA, the Indemnitors agreed that Atlantic Specialty will be entitled to injunctive relief for specific performance of Indemnitors' obligation to deposit with Atlantic Specialty the sum demanded as collateral security.

55. In the absence of the equitable relief sought herein, Atlantic Specialty will not be adequately secured for any obligations that have arisen and may arise hereafter under the Bond and as a result of Indemnitors' breaches of the GIA, all to the prejudice and irreparable harm of Atlantic Specialty. Without adequate security, Atlantic Specialty will be prejudiced because it will be required to advance funds in connections with claim(s) on the Bond.

56. Based upon the Indemnitors' refusal to secure Atlantic Specialty in accordance with its demands, unless the injunctive relief is granted, Atlantic Specialty is fearful and apprehensive that Indemnitors (a) are or will become financially unable to pay any amounts that may be found owing for which Atlantic Specialty may be liable and Atlantic Specialty's related expenses (including attorneys' fees); or (b) will sell, transfer, dispose, lien, secure or otherwise conceal or divert their assets from being used to discharge Indemnitors' obligation to hold harmless or exonerate Atlantic Specialty.

57. Without the injunctive relief being granted, Atlantic Specialty's equitable right of collateralization will be forever lost, depriving Atlantic Specialty of adequate security for its obligation to make payments to the obligees under the Bond.

## **COUNT V – Recovery of Attorneys' Fees and Expenses**

58. Atlantic Specialty realleges and incorporates by reference paragraphs 1-26 of this Complaint.

59. Atlantic Specialty is entitled to recover its attorneys' fees and expenses from the Indemnitors under the terms of the GIA.

WHEREFORE, PREMISES CONSIDERED, Atlantic Specialty Insurance Company prays for the following relief:

(a) For the issuance of process requiring each of the Defendants to answer Atlantic Specialty's Complaint for indemnity and equitable relief;

(b) For the entry of judgment against the Indemnitors in an amount sufficient to exonerate, indemnify and keep indemnified, and to defend and hold Atlantic Specialty harmless from and against any and all liability for loss, fees, costs and expenses of any kind or nature, including but not limited to, court costs, attorney's fees, accounting, and any other outside consulting fees and from and against any such losses and expenses which the Surety may sustain or incur, plus interest thereon, arising out of, directly or indirectly: (1) the Surety being requested by the Indemnitors to execute or procure the execution of any Bonds; or (2) the Surety having executed or procured the execution of any Bonds on behalf of Principal; or (3) the failure of the Indemnitors to perform or comply with any of the terms and conditions of this Agreement and/or (4) the Surety enforcing any of the terms and conditions of this Agreement which amount currently exceeds seven-hundred thousand dollars ($700,000) and will be proven at trial;

(c)  For the entry of a judgment against the Indemnitors for all losses suffered and anticipated to be suffered by Atlantic Specialty by reason of having issued the Bonds on behalf of Liberty Grande, which amount currently exceeds seven-hundred thousand dollars ($700,000) and will be proven at trial;

(d)  For the entry of a judgment against the Indemnitors for money and/or property sufficient to exonerate Atlantic Specialty, as surety, from and against any loss that has resulted to Atlantic Specialty by reason of having executed the Bonds, which amount currently exceeds seven-hundred thousand dollars ($700,000) and will be proven at trial;

(e)  For the entry of a judgment compelling the Indemnitors to deposit collateral with Atlantic Specialty totaling six million dollars ($6,000,000) as security for its exoneration, indemnification, and other obligations to Atlantic Specialty under the GIA relative to the Bonds (though Atlantic Specialty expressly reserves the right to demand additional collateral in the future);

(f)  For the entry of a judgment against the Indemnitors in an amount equal to Atlantic Specialty's attorneys' fees and expenses;

(g)  For such further relief, both general and specific, as may be appropriate in accordance with the nature of this cause including, but not limited to, pre-judgment and post-judgment interest.

Dated: November 25, 2020

Respectfully submitted,

s/ *Jonathan P. Cohen*  
Jonathan P. Cohen  
Florida Bar No.: 11526  
Jonathan P. Cohen, P.A.  
500 East Broward Blvd. Suite 1710  
Fort Lauderdale, Florida 33394  
jcohen@jcohenpa.com  
service@jcohenpa.com  
Attorneys for Atlantic Specialty Ins. Co.